**CALVIN NEBELSICK** on behalf
of **GILLIAN M. NEBELSICK**,

      Plaintiff,

vs.

**CAROLYN W. COLVIN**, ACTING
COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

**No. 13-CV-4104-DEO**

**ORDER**

---

## I.  BACKGROUND

The above captioned case arises out of a Social Security
Complaint filed by the (former) Plaintiff Gillian Nebelsick
[hereinafter Ms. Nebelsick] on October 28, 2013.  Docket No.
2.  This case has an usually complicated procedural history,
owing in part to the fact that Ms. Nebelsick passed away on
January 2, 2014.

Ms. Nebelsick filed the present Complaint on October 28,
2013, shortly before she passed away.  On April 9, 2014,
Plaintiff's counsel filed Plaintiff's initial brief.  Docket
No. 13.  On April 15, 2014, this Court entered an Order
vacating the pending briefing schedule.  Docket No. 14.  In
its Order, the Court noted several deficiencies in Plaintiff's

brief and instructed Plaintiff's counsel to file a supplemental brief. Id. The Plaintiff filed a supplemental brief on May 17, 2014. On July 18, 2014, the Defendant filed a Motion to Dismiss, Docket No. 18. In the Motion to Dismiss, the Defendant argues that Ms. Nebelsick's case should be dismissed, because after she passed away, her attorney failed to properly substitute a new party to the case. Specifically, the Defendant argued:

> [b]ecause plaintiff's successors or representative did not file a motion for substitution of a party within 90 days after making a statement to the Court noting plaintiff's death, defendant respectfully requests that this Court enter an order dismissing this case under Rule 25(a)(1).

Docket No. 18, Att. 1, p. 5.[1]

Plaintiff's counsel filed a Resistence. Docket No. 20. On August 27, 2014, United States Magistrate Judge Leonard T. Strand considered whether Plaintiff should be allowed to add a new party even though the deadline had passed. Judge Strand ruled that:

---

[1] Under the applicable rule, Plaintiff's counsel should have moved to substitute her next of kin by July 8, 2014.

> [i]n considering all of the relevant
> circumstances, including the relatively
> short delay, I find that it would be unjust
> to penalize Mr. Nebelsick for plaintiff's
> counsel's inaction. As such, I find that
> plaintiff has shown excusable neglect such
> that the untimely motion to substitute
> party should be allowed. I further find,
> based on the representations set forth in
> plaintiff's reply (Doc. No. 26 at ¶ 2),
> that Mr. Nebelsick is a proper party in
> interest. See 42 U.S.C. § 404(d); 20
> C.F.R. § 404.503(b). As such, he may be
> substituted as the plaintiff in this case.

Docket No. 27, p. 3. Based on the Magistrate's ruling, Calvin Nebelsick [hereinafter Mr. Nebelsick] was added as the new Plaintiff in this case. Shortly thereafter, this Court denied the Defendant's Motion to Dismiss because Judge Strand allowed Mr. Nebelsick to be added as a party in this case. See Docket No. 28. The Defendant then filed its brief on November 21, 2014. The parties appeared for a hearing on January 14, 2015. After considering the parties' arguments, the Court took the matters under consideration and now enters the following.

## II. FACTS

Ms. Nebelsick was born on November 1, 1962, and was 49 years old at the time of the hearing before the Administrative Law Judge (ALJ). She lived in Lake Park, Iowa. She had three children, only one of them was still at home at the time of

the hearing. She lived with her husband who was an over the road trucker. Ms. Nebelsick had a high school education and some post-high school education to become a paramedic.

Ms. Nebelsick had a relatively consistent work history prior to her alleged onset date. She worked for the Lake Park ambulance crew for 13 years and ran her own business until 2006. Her business provided pilot cars for truck drivers. Her business had several employees who drove pilot cars for her. After the birth of the last child in 2002, Ms. Nebelsick began developing mental health issues. She also suffered from an alcohol addiction through that time period.

Ms. Nebelsick alleged disability due to bipolar disorder, depression, hyperthyroidism, COPD-Stage 3, and emphysema. Her alleged onset date is September 30, 2006, which is also the date Ms. Nebelsick is last insured.

III. **PROCEDURAL HISTORY**

Plaintiff applied for disability insurance benefits under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401-434 on March 2, 2011, alleging disability beginning September 30, 2006. The claim was denied initially on May 12, 2011, and upon reconsideration on July 27, 2011. Ms.

Nebelsick appealed the case to the ALJ who held a hearing on June 11, 2012. The ALJ denied Ms. Nebelsick's claim on August 6, 2012. Ms. Nebelsick appealed to the Appeals Council who denied her claim on August 8, 2013. Ms. Nebelsick filed the present Complaint shortly thereafter.

The ALJ set out the issue in Ms. Nebelsick's case:

> [t]he issue is whether the claimant is disabled under sections 216(i) and 223(d) of the Social Security Act. Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. There is an additional issue whether the insured status requirements of sections 216(i) and 223 of the Social Security Act are met. The claimant's earnings record shows that the claimant has acquired sufficient quarters of coverage to remain insured through September 30, 2006 (hereinafter "the date last insured"). Thus, the claimant must establish disability on or before that date in order to be entitled to a period of disability and disability insurance benefits.

Docket No. 9, Tr. 9.

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled and entitled to benefits. 20 C.F.R. § 404.1520. The five successive steps are: (1) determination of whether a plaintiff is engaged in "substantial gainful activity," (2) determination of whether a plaintiff has a "severe medically determinable physical or medical impairment" that lasts for at least 12 months, (3) determination of whether a plaintiff's impairment or combination of impairments meets or medically equals the criteria of a listed impairment, (4) determination of whether a plaintiff's Residual Functional Capacity (RFC) indicates an incapacity to perform the requirements of their past relevant work, and (5) determination of whether, given a Plaintiff's RFC, age, education and work experience, a plaintiff can "make an adjustment to other work." 20 C.F.R. § 404.1520(4)(i-v).

At step one, if a plaintiff is engaged in "substantial gainful activity" within the claimed period of disability, there is no disability during that time. 20 C.F.R. § 404.1520(a)(4)(i). At step 2, if a plaintiff does not have a

"severe medically determinable physical or mental impairment"
that lasts at least 12 months, there is no disability. 20
C.F.R. § 404.1520(a)(4)(ii). At step 3, if a plaintiff's
impairments meet or medically equal the criteria of an
impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix
1, and last at least 12 months, a plaintiff is deemed
disabled. 20 C.F.R. § 404.1520(e). Before proceeding to step
4 and 5, the ALJ must determine a plaintiff's Residual
Functional Capacity [RFC]. RFC is the "most" a person "can
still do" despite their limitations. 20 C.F.R. §
404.1545(a)(1). The RFC an ALJ assigns a plaintiff has been
referred to as the "most important issue in a disability case
. . . ." Malloy v. Astrue, 604 F. Supp. 2d 1247, 1250 (S.D.
Iowa 2009) (citing McCoy v. Schweiker, 683 F.2d 1138, 1147
(8th Cir. 1982)(en banc) *abrogated on other grounds* by Higgins
v. Apfel, 222 F.3d 504, 505 (8th Cir. 2000)). When
determining RFC, the ALJ must consider all of the relevant
evidence and all of the Plaintiff's impairments, even those
which are not deemed severe, as well as limitations which
result from symptoms, such as pain. 20 C.F.R. §
404.1545(a)(2) and (3). An ALJ "may not simply draw his own

inferences about a plaintiff's functional ability from medical reports." Strongson v. Barnhart, 361 F.3d 1066, 1070 (8th Cir. 2004).

At step 4, if, given a plaintiff's RFC, a plaintiff can still perform their past relevant work, there is no disability. 20 C.F.R. § 404.1520(a)(4)(iv). At step 5, if, given a plaintiff's RFC, age, education, and work experience, a plaintiff can make an adjustment to other work, there is no disability. 20 C.F.R. §§ 404.1520(a)(4)(v) and 416.920(a)(4)(v). This step requires the ALJ to provide "evidence" that a plaintiff could perform "other work [that] exists in significant numbers in the national economy." 20 C.F.R. § 404.1560(c)(2). In other words, at step 5, the burden of proof shifts from a plaintiff to the Commissioner of the S.S.A. Basinger v. Heckler, 725 F.2d 1166, 1168 (8th Cir. 1984). The ALJ generally calls a Vocational Expert (VE) to aid in determining whether this burden can be met.

In this case, the ALJ applied the appropriate methodology and found that Ms. Nebelsick had not engaged in substantial gainful employment since September 30, 2006. (As admitted in

her brief, Ms. Nebelsick had no reported earnings in 2004, 2005, or 2006.)

The ALJ stated that Ms. Nebelsick had the following medically determinable impairments: mood disorder; substance addictive disorder with a history of polysubstance abuse; hypothyroidism; chronic obstructive pulmonary disease (COPD) (20 C.F.R. 404.1521 et seq.).

However, the ALJ considered Ms. Nebelsick's impairments individually and combined and found that Ms. Nebelsick did not suffer from a disability as contemplated by the Social Security Code. Specifically, the ALJ concluded that Ms. Nebelsick had no severe impairments, concluding his analysis at Step Two. The ALJ stated:

> impairment or combination of impairments that significantly limited the ability to perform basic work- related activities for 12 consecutive months; therefore, the claimant did not have a severe impairment or combination of impairments (20 CFR 404.1521 et seq.).

Docket No. 9, Tr. 11.

The ALJ considered Ms. Nebelsick's mental impairments using the "paragraph B" criteria and the "paragraph C" criteria as set out in 20 C.F.R. Part 404, Subpart P,

Appendix 1 (20 C.F.R. 416.920(d), 416.925 and 416.926), and determined that Ms. Nebelsick's mental impairments did not meet either set of requirements.  Docket No. 9, Tr. 13-14.

The ALJ based his finding on a lack of medical evidence from the time period in question.  The ALJ relied on the consultative opinions of Dr. Rene Staudacher and Dr. Donald Shumate, who opined there was not enough evidence in the record to determine a severe physical impairment prior to the alleged onset date.  However, the ALJ noted that relevant medical records were not available until after the experts offered their opinions.  Docket No. 9, Tr. 14.  The ALJ also relied on the opinion of Dr. Aaron Quinn, who opined the medical records did not support a finding of a severe impairment prior to the alleged onset date.  Docket No. 9, Tr. 15.  The ALJ also gave weight to one treating source, Dr. McCabe, who opined Ms. Nebelsick was doing well in 2006, but gave less weight to the opinions of Nurse Hemphill, the other treating source.[2]

---

[2]   The ALJ also noted that several sources, including nurse practitioner Dawn Howley, provided medical evidence of disability from the time period after the alleged onset date.

10

The ALJ considered the Plaintiff's credibility under the

Polaski standard and stated:

> [a]fter considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could have been reasonably expected to produce the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with finding that the claimant has no severe impairment or combination of impairments for the reasons explained below.

Docket No. 9, Tr. 14. The ALJ concluded:

> [c]onsidering the claimant's activities of daily living and previous work activity, the treatment records, the State agency consultant assessments at Exhibits 6F, 7F, 8F, and 9F, the testimony of Nurse Practitioner Hemphill at hearing, and the claimant's subjective complaints and hearing testimony, the undersigned finds that the claimant's mental and physical impairments did not cause significant limitation in her ability to perform basic work activities as of her alleged onset date and date last insured, and were therefore not "severe" under the meaning of Social Security disability regulations. The claimant was not under a disability, as defined in the Social Security Act, at any time from September 30, 2006, the alleged onset date, through September 30, 2006, the date last insured (20 CFR 404.1520(c)).

Docket No. 9, Tr. 16.

## IV.   STANDARD OF REVIEW

This Court's role in review of the ALJ's decision requires a determination of whether the decision of the ALJ is supported by substantial evidence in the record as a whole. See 42 U.S.C. § 405(g); <u>Finch v. Astrue</u>, 547 F.3d 933, 935 (8th Cir. 2008).  Substantial evidence is less than a preponderance but enough that a reasonable mind might find it adequate to support the conclusion in question.  <u>Juszczyk v. Astrue</u>, 542 F.3d 626, 631 (8th Cir. 2008) (citing <u>Kirby v. Astrue</u>, 500 F.3d 705, 707 (8th Cir. 2007)).  This Court must consider both evidence that supports and detracts from the ALJ's decision.  <u>Karlix v. Barnhart</u>, 457 F.3d 742, 746 (8th Cir. 2006) (citing <u>Johnson v. Chater</u>, 87 F.3d 1015, 1017 (8th Cir. 1996)).  In applying this standard, this Court will not reverse the ALJ, even if it would have reached a contrary decision, as long as substantial evidence on the record as a whole supports the ALJ's decision.  <u>Eichelberger v. Barnhart</u>, 390 F.3d 584, 589 (8th Cir. 2004).  The ALJ's decision shall be reversed only if it is outside the reasonable "zone of

choice." <u>Hacker v. Barnhart</u>, 459 F.3d 934, 936 (8th Cir. 2006) (citing <u>Culbertson v. Shalala</u>, 30 F.3d 934, 939 (8th Cir. 1994)).

This Court may also ascertain whether the ALJ's decision is based on legal error. <u>Lauer v. Apfel</u>, 245 F.3d 700, 702 (8th Cir. 2001). If the ALJ applies an improper legal standard, it is within this Court's discretion to reverse his/her decision. <u>Neal ex rel. Walker v. Barnhart</u>, 405 F.3d 685, 688 (8th Cir. 2005); 42 U.S.C. 405(g).

## V. ISSUES

Mr. Nebelsick argues that the ALJ's finding that Ms. Nebelsick had no severe impairments prior to the date last insured is not supported by substantial evidence.

## VI. ANALYSIS

In order for a plaintiff to qualify for disability benefits, they must demonstrate they have a disability as defined in the Social Security Act [hereinafter the Act]. The Act defines a disability as an:

> inability to engage in any substantial
> gainful activity by reason of any medically
> determinable physical or mental impairment
> which can be expected to result in death or
> which has lasted or can be expected to last

13

for a continuous period of not less than 12
                    months . . . .

42 U.S.C. § 423(d)(1)(A).

This case is largely about time.  There is no doubt that in the last years of her life, Ms. Nebelsick suffered disabling illnesses.  However, Ms. Nebelsick's date last insured is 2006, some seven years before she passed way.  Many people are perfectly healthy, or at least not disabled, seven years before they pass away.  The ALJ found that Ms. Nebelsick was one of those people.

The parties agree that Ms. Nebelsick's date last insured was September 30, 2006, and to support a finding of disability, she must prove disability on or before that date. (See Plaintiff's initial brief, Docket No. 13, p. 2, stating "Plaintiff had no reported earnings in 2004, 2005, 2006, or 2007, and was last insured for Title II benefits as of September 30, 2006.")  However, her husband argues the ALJ's decision is not supported by substantial evidence because Ms. Nebelsick was disabled by September 30, 2006.

This case is further complicated by two factors.  First, in the most relevant time period, 2005-2006, Ms. Nebelsick treated with nurse practitioner Denise Hemphill.    Ms.

Hemphill's office was destroyed in a fire some time thereafter and many records were lost. Accordingly, Ms. Hemphill testified in person at the hearing before the ALJ to supplement the record.

Second, in most social security appeals, the ALJ finds that the claimant has a severe impairment, but either has the residual functional capacity to return to their past relevant work or relies on a vocational expert to find that the claimant could perform some job. In this case, the ALJ found that Ms. Nebelsick had no severe impairments. As the Court noted in its Order directing the Plaintiff to file a supplemental brief:

> [t]he ALJ determined that Ms. Nebelsick had
> no severe impairments. Consequently, the
> ALJ did not conduct a residual functional
> capacity evaluation. The Plaintiff shall
> brief what affect the ALJ's determination
> has on her argument.

Docket No. 14, p. 3. The Plaintiff touched on this issue in the supplement brief, but only stated that the ALJ should have done an RFC evaluation. As the Defendant states in its brief:

> Plaintiff appears to allege that the ALJ
> erred in not making a finding of a residual
> functional capacity ("RFC") in the process
> of the determination that plaintiff was not
> disabled at step two of the sequential

> evaluation process. See Pl.'s Second Br.
> at 2. This argument is nonsense and
> demonstrates a misunderstanding of the
> sequential evaluation process. The RFC
> finding is made after step three of that
> process, thus, because plaintiff was deemed
> not disabled at step two no RFC finding was
> necessary.

Docket No. 31, p. 14. The Defendant is, of course, correct;

if the ALJ's finding that there is no severe impairment

stands, there is no need to conduct an RFC.

Thus, turning back to the Court's original question in

Docket No. 14, what effect the lack of an RFC has on this

appeal, the answer is that the record is significantly

underdeveloped from what a social security record would

'normally' be. As stated in the Defendant's brief:

> [p]laintiff argues that the evidence,
> minimal though it is, overwhelmingly
> supports an immediate award of benefits.
> See Pl.'s First Br. at 6; Pl.'s Second Br.
> at 12...Although defendant maintains that
> the ALJ's decision is supported by
> substantial evidence on the record as a
> whole, should this Court disagree, the
> proper remedy is for remand for further
> development, fact-finding, and
> consideration of the evidence.

Docket No. 31, p. 14.   The Defendant is correct.   Without an

RFC finding, an evaluation of past relevant work or testimony

from a vocational expert, there simply is not evidence in the

record from which the Court could award benefits.   Doing so

would invite a reversal from the 8th Circuit Court of Appeals.

Accordingly, even if the Court agrees with the Plaintiff that

the  ALJ's  finding  regarding  severe  impairments  is  not

supported by substantial evidence (the Court does agree), it

cannot  award  benefits.    The  proper  remedy  in  this  type  of

situation is a reversal for the ALJ to further develop the

record.

Turning to the alleged errors, the ALJ based his findings

on the opinions of consulting experts.   The ALJ specifically

stated:

> the undersigned has adopted the opinions of
> the State agency consultants in finding
> that the claimant did not have a severe
> physical impairment as of the alleged onset
> date and date last insured.

Docket No. 9, Tr. 14.   Dr. Staudacher, who considered Ms.

Nebelsick's physical impairments, dated her opinion May 2,

2011, and Dr. Donald Shumate, who also considered Ms.

Nebelsick's physical impairments, dated his opinion July 21,

2011.  The ALJ likewise adopted the opinions of state consultants Dr. Aaron Quinn and Dr. Myrna Tashner that Ms. Nebelsick had no severe mental impairments.  Dr. Quinn dated his opinion May 11, 2011.  Dr. Tasher dated her opinion on July 22, 2011.

The dates of those opinions are very important because, as the ALJ admits:

> [t]he undersigned acknowledges that Nurse Hemphill's treatment records, received after the completion of the State agency consultants' evaluations, show some treatment for respiratory problems and hypothyroidism around the time of the date last insured...

Docket No. 9, Tr. 14.

As discussed above, Nurse Hemphill was Ms. Nebelsick's primary care provider in the year so leading up to Ms. Nebelsick's alleged onset date/expiration of insured status. Nurse Hemphill's medical records provide valuable insight into Ms. Nebelsick's condition around the alleged onset date.

For example, regarding her mental health, on March 22, 2006, Nurse Hemphill stated that Ms. Nebelsick was having a lot anxiety attacks and that Ms. Nebelsick felt she was not getting proper care to treat all her issues.  Docket No. 9,

Tr. 467.  Nurse Hemphill noted panic attacks on November 4, 2005.  See Docket No. 9, Tr. 468.  On July 14, 2006, where Nurse Hemphill stated that Ms. Nebelsick has been spiraling out of control for approximately the last four years.  Docket No. 9, Tr. 469.  Nurse Hemphill also noted uncontrolled depression and the fact that Ms. Nebelsick was not satisfied with her treatment progression.  Id.  On August 16, 2006, Ms. Nebelsick was still depressed with no motivation.  See Docket No. 9, Tr. 471.  On October 6, 2006, Nurse Hemphill noted that Ms. Nebelsick needed to continue treating for her depression.  Docket No. 9, Tr. 472.  Nurse Hemphill's records continue for the period after the alleged onset date and consistently report that Ms. Nebelsick suffered from ongoing mental health issues such as depression and anxiety.  See Docket No. 9, Tr. 474-479.

Another major issue in this case was Ms. Nebelsick's COPD.  While the COPD was a major factor in Ms. Nebelsick's end of life issues, it is undisputed that the COPD did not manifest until after her date last insured.  However, Ms. Nebelsick and Nurse Hemphill testified that Ms. Nebelsick suffered from chronic bronchitis in the time frame leading up

to Ms. Nebelsick's alleged onset date.  This testimony is supported by Nurse Hemphill's medical records.  See, for example, Docket No. 9, Tr. 468, dated November 4, 2005, where Nurse Hemphill stated that Ms. Nebelsick had suffered from a cough for a long time.  Similarly, on October 6, 2006, a week after the alleged onset date, Ms. Nebelsick complained to Nurse Hemphill of coughing related issues.  See Docket No. 9, Tr. 472.

The ALJ adopted the findings of the reviewing consultants mentioned above, but those consultants did not have access to the medical records provided by Ms. Nebelsick's treating provider.  Considering that he adopted incomplete findings, it would be an error to maintain that the ALJ's determination that Ms. Nebelsick did not suffer from any severe impairments is supported by substantial evidence.

It is beyond dispute that treating practitioners have the clearest insight into the medical conditions at issue in social security disability cases.  As has been repeatedly stated:

> [t]he opinion of a treating physician:
> should not ordinarily be disregarded and is
> entitled to substantial weight. A treating
> physician's opinion regarding an

> applicant's impairment will be granted
> controlling weight, provided the opinion is
> well-supported by medically acceptable
> clinical and laboratory diagnostic
> techniques and is not inconsistent with the
> other substantial evidence in the record.

Singh v. Apfel, 222 F.3d 448, 452 (8th Cir. 2000); see also 20

C.F.R. §404.1527(c)(2) and Reed v. Barnhart, 399 F.3d 917, 920

(8th Cir. 2005). Even if not entitled to controlling weight,

in many cases, a treating source's medical opinion will be

entitled to the greatest weight and should be adopted. SSR

96-5p; see Reed, 399 F.3d at 920; 20 C.F.R. §404.1527(c)(2).

The ALJ must "always give good reasons . . . for the weight

[he gives the] treating source's opinion." 20 C.F.R.

§404.1527(c)(2); see Singh, 222 F.3d at 452. In the

decision's narrative discussion section, the ALJ "must . . .

explain how any material inconsistencies or ambiguities in the

evidence in the case record were considered and resolved."

SSR 96-8p. Additionally, the opinions of an examining

physician should be given greater weight than the opinions of

a source who had not examined the claimant. See Shontos v.

Barnhart, 328 F.3d 418, 425 (8th Cir. 2003), citing 20 C.F.R.

§ 404.1527(d)(1) (now 20 C.F.R. §404.1527(c)).

Although it runs contrary to the current trends in medicine, the social security regulations do not recognize nurse practitioners and physician's assistants as treating sources. Accordingly, Nurse Hemphill would be 'another source' under the rules. The 8th Circuit has given explicit instruction regarding the weight given to other sources:

> [o]n August 9, 2006, the SSA issued Social Security Ruling (SSR) 06-03p, 71 Fed. Reg. 45,593 (Aug. 9, 2006). The ruling clarified how it considers opinions from sources who are not what the agency terms "acceptable medical sources." Social Security separates information sources into two main groups: acceptable medical sources and other sources. It then divides other sources into two groups: medical sources and non-medical sources. 20 C.F.R. §§ 404.1502, 416.902 (2007). Acceptable medical sources include licensed physicians (medical or osteopathic doctors) and licensed or certified psychologists. 20 C.F.R. §§ 404.1513(a), 416.913(a) (2007). According to Social Security regulations, there are three major distinctions between acceptable medical sources and the others: (1) Only acceptable medical sources can provide evidence to establish the existence of a medically determinable impairment, id., (2) only acceptable medical sources can provide medical opinions, 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2) (2007), and (3) only acceptable medical sources can be considered treating sources, 20 C.F.R. §§ 404.1527(d) and 416.927(d) (2007). Other sources: Medical sources include nurse practitioners, physician assistants,

22

licensed clinical social workers, naturopaths, chiropractors, audiologists, and therapists. Non-medical sources include school teachers and counselors, public and private social welfare agency personnel, rehabilitation counselors, spouses, parents and other caregivers, siblings, other relatives, friends, neighbors, clergy, and employers. 20 C.F.R. §§ 404.1513(d), 416.913(d) (2007). "Information from these 'other sources' cannot establish the existence of a medically determinable impairment," according to SSR 06-03p. "Instead, there must be evidence from an 'acceptable medical source' for this purpose. However, information from such 'other sources' may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function."

Sloan v. Astrue, 499 F.3d 883, 888 (8th Cir. 2007). The Sloan Court went on to say, "[i]n general, according to the ruling, the factors for considering opinion evidence include: [h]ow long the source has known and how frequently the source has seen the individual; [h]ow consistent the opinion is with other evidence; [t]he degree to which the source presents relevant evidence to support an opinion; [h]ow well the source explains the opinion; [w]hether the source has a specialty or area of expertise related to the individual's impairment(s);

and [a]ny other factors that tend to support or refute the opinion." <u>Sloan</u>, 499 F.3d at 889.

Given the importance of treating providers, even if they are qualified as 'other sources' as Nurse Hemphill would be, the Court cannot credit the consultant opinions when those opinions did not have access to her records. Accordingly, the Court finds that ALJ's finding that Ms. Nebelsick did not suffer from a severe impairment is not supported by substantial evidence.

Moreover, as discussed above, Nurse Hemphill's office suffered a fire in the years between Ms. Nebelsick's alleged onset date and the date these proceedings commenced. Accordingly, while some records were delayed, others were apparently lost. To make up for the gap in the record, Nurse Hemphill testified at the ALJ hearing. As set out in the Plaintiff's initial brief:

> [f]irst, Ms. Hemphill expressed the opinion that plaintiff's medication management at Seasons Center for mental health issues bounced around and contributed to making plaintiff feel unable to function at normal capacity. (Tr. p. 54). She also expressed the opinion that the medications prescribed by Seasons Center tended to make plaintiff too groggy and drugged. (Tr. p. 55). Second, Ms. Hemphill believed that the

Seasons Center treatment records suggest that plaintiff was not capable of functioning in a competitive work environment. Those records were compiled through 2006. (Tr. p. 55). Third, Ms. Hemphill testified that plaintiff developed hypothyroidism because of Lithium she had been prescribed while under treatment at Seasons Center which rendered her tired, fatigued all the time, unable to function, confused, and not able to think clearly. (Tr. p. 56). She testified that there is something about Lithium that is known to cause the development of hypothyroidism. (Tr. p. 56). Fourth, Ms. Hemphill described plaintiff with physical manifestations of severe fatigue and depression when she first started treating her in 2005. (Tr. p. 57). Fifth, Ms. Hemphill testified that plaintiff had a tremor in her hands and was very shaky all the time when she first observed her back in March, 2006 and that it was plaintiff's mental health disorder that contributed to her abuse of alcohol. (Tr. p. 58). Sixth, Ms. Hemphill testified that plaintiff's memory and recall was very poor and that she had absolutely no libido at that time of her office visit in March, 2006. (Tr. p. 59). Seventh, she described plaintiff as suffering from anxiety attacks in 2006 which led to the shakiness in her upper extremities and that her panic attacks were attributable to both her underlying bipolar illness and her medications, but more so the bipolar illness. (Tr. p. 59). Eighth, Ms. Hemphill described plaintiff as exhausted and crying when she was in the clinic on March 22, 2006 for evaluation. (Tr. p. 60). Ninth, Ms. Hemphill testified that plaintiff has a lot of problems with bronchitis and some problems with bronchial

> spasms (wheezing) which wheezing would
> prevent her from getting good oxygenation.
> That finding is documented in the October,
> 2006 office visit.  Ms. Hemphill diagnosed
> hypothyroidism at the time of that visit.
> (Tr. p. 61).

Docket No. 13, p. 4-5.

Nurse Hemphill's records do not exist in a vacuum, either.  They are the natural extension of Ms. Nebelsick's earlier treatment history.  As set out in the Plaintiff's supplemental brief, on December 13, 2002, Dr. M. Christine Segreto stated that Ms. Nebelsick does have symptoms of depression and lack of motivation.  She does feel that she is too tired to get anything accomplished and is overwhelmed. See Docket No. 9, Tr. 465.  On June 6, 2004, Dr. Segreto noted that Ms. Nebelsick had Major Depression recurrent, moderate and Global Assessment Function (GAF) score of 40.  Docket No. 9, Tr. 455.  On June 28, 2004, Dr. Segreto continued to note major depression with a GAF score of 31.  Docket No. 9, Tr. 453.  On December 22, 2004, Dr. Barbara McCabe noted depression with a GAF score of 45.  Docket No. 9, Tr. 450.  On February 24, 2005, Dr. McCabe noted that Ms. Nebelsick continued to suffer from major depression and found she had a GAF score of 40.  Docket No. 9, Tr. 448-449.  On March 14,

2005, Dr. McCabe noted that Ms. Nebelsick had a GAF score of 60. Docket No. 9, Tr. 447. On April 11, 2005, Dr. McCabe continued to note major depression and bipolar disorder. Docket No. 9, Tr. 446.

Additionally, at the hearing, Ms. Nebelsick testified about her condition leading up to the alleged on set date. Ms. Nebelsick testified that she suffered from severe depression leading up to September 30, 2006. Docket No. 9, Tr. 47. She also testified she suffered chronic bronchitis during that time period. Docket No. 9, Tr. 46.

Based on the foregoing, the Court is persuaded that, at the very least, Ms. Nebelsick suffered from the severe impairment of depression on her alleged onset date.

## VII. CONCLUSION

It is clear the ALJ erred and his determination that Ms. Nebelsick has no severe impairment is not supported by substantial evidence. As discussed above, the Court must remand the case so the Commissioner can further develop the record, because the Eighth Circuit has held that a remand for an award of benefits is appropriate only where "the record 'overwhelmingly supports'" a finding of disability. 42 U.S.C.

405(g); <u>Buckner v. Apfel</u>, 213 F.3d 1006, 1011 (8th Cir. 2000) (citing <u>Thompson v. Sullivan</u>, 957 F.2d 611, 614 (8th Cir. 1992).

In this case, the record is lacking in several key areas. Accordingly, an award for benefits would not be appropriate at this time. The medical consultants did not have the benefit of the entire medical record when they formed their opinion that Ms. Nebelsick did not have any severe impairments. Accordingly, those opinions, adopted by the ALJ, were not supported by substantial evidence. On remand, the Commissioner must further develop the record to determine whether Ms. Nebelsick suffers from other severe impairments and whether her severe impairments amount to any listings. Additionally, an ALJ will have to develop an RFC and continue with the five step sequential evaluation discussed above.

**Therefore, the decision of the ALJ is reversed and remanded for further consideration.**

Application for attorney fees pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412 (EAJA), must be filed within thirty (30) days of the entry of final judgment in this action. Thus, unless this decision is appealed, if

28

plaintiff's attorney wishes to apply for EAJA fees, it must be done within thirty (30) days of the entry of the final judgment in this case.

**IT IS SO ORDERED** this 30th day of March, 2015.

Donald E. O'Brien, Senior Judge
United States District Court
Northern District of Iowa